**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Edward O'BRIEN, Appellee.**

Superior Court of Pennsylvania.

Argued June 24, 2003.

Filed Nov. 13, 2003.

William G. Young, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Samuel A. DiMatteo, Philadelphia, for appellee.

BEFORE: JOYCE, BENDER and BOWES, JJ.

OPINION BY BENDER, J.:

¶ 1 The Commonwealth of Pennsylvania appeals from the pre-trial order entered on April 26, 2002, precluding the admission of evidence of prior bad acts/crimes that the Commonwealth sought to admit in its prosecution of Edward O'Brien (O'Brien) on charges of rape, involuntary sexual intercourse, statutory assault, statutory sexual assault, endangering the welfare of a child, indecent assault, unlawful restraint, false imprisonment, simple assault and recklessly endangering another person. We reverse.

¶ 2 O'Brien was arrested on May 29, 2001, and charged with the above-enumerated offenses. Following a preliminary hearing held on October 30, 2001, and two continuances, the case was listed for a non-jury trial to begin on May 3, 2002. However, on April 23, 2002, the Commonwealth filed a Motion for Admission of Prior Bad Acts, pursuant to Pa.R.E. 404(b),[1] that would permit it to introduce evidence of O'Brien's prior sexual assaults on two other victims for which he received concurrent sentences of 3½ to 15 years' imprisonment in a state correctional facility. A rule to show cause was issued listing the motion for hearing on April 26, 2002. However, on that date, following a brief interaction between the Commonwealth's attorney and the court, the court denied the motion. Likewise, reconsideration of the motion was denied and the Commonwealth filed the instant appeal.[2]

---

1. Pa.R.E. 404(b) provides:
   (b) Other Crimes, Wrongs, or Acts
   (1)Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.
   (2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
   (3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.
   (4) In criminal cases, the prosecution shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of any such evidence it intends to introduce at trial.

2. In its Notice of Appeal, the Commonwealth certified that the court's April 26th order sub-

¶ 3 The Commonwealth raises one issue in this appeal:

Did the lower court err by denying the Commonwealth's motion in limine, which sought admission of evidence of defendant's prior, substantially similar sexual assaults against two other children, where the evidence was admissible for proper purposes under Pa.R.E. 404(b), and the probative value far outweighed any potential prejudicial effect?

Commonwealth's brief at 3.

¶ 4 In an appeal such as this, we are guided by our well-settled standard of review:

[A]n appellate court may reverse a trial court's ruling regarding the admissibility of evidence only upon a showing that the trial court abused its discretion. Because the trial court indicated the reason for its decision ... our scope of review is limited to an examination of the stated reason.

*Commonwealth v. Horvath,* 781 A.2d 1243, 1246 (Pa.Super.2001) (quoting *Commonwealth v. Minerd,* 562 Pa. 46, 753 A.2d 225, 229 (2000)). "We must also be mindful that 'a discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion.' " *Id.* (quoting *Commonwealth v. Cohen* 529 Pa. 552, 605 A.2d 1212, 1218 (1992)).

¶ 5 The Commonwealth argues that the evidence of O'Brien's prior crimes is strikingly similar to the present charges, is highly probative and shows a common plan, scheme or design. Moreover, because O'Brien has chosen to be tried by a judge without a jury, the potential for undue prejudicial effect is diminished.

¶ 6 Initially noting that the complainant, Michael, was ten years old at the time of the offenses at issue, the court, in its opinion, recited the following facts that the Commonwealth intended to prove at trial:

O'Brien is a homosexual who was previously involved in a relationship with Michael's father. He was also a friend of Michael's mother. On an unknown date in January of 1996 Michael went to O'Brien's house to visit. While Michael was there alone with him, O'Brien asked him to go to the bedroom. Defendant turned on a pornographic videotape, placed Michael on the bed, pulled down his own pants and Michael's pants and attempted to insert his penis into Michael's anus. Michael pushed away from the defendant, pulled up his pants and left the house. Defendant told him not to tell anyone. Michael was afraid it was his fault and so he did not report the crime. Sometime later Michael's mother caught him sexually assaulting his younger brother. The information of this crime was divulged to a therapist during questioning regarding the assault on his brother.

Trial Court Opinion (T.C.O.), 11/5/02, at 3.

¶ 7 The court also set out the facts involving O'Brien's 1985 guilty plea to charges of sexual assault of two male children in 1982 and 1985. The court's rendition of those facts reads as follows:

O'Brien pled guilty to charges stemming from his sexual assaults of Timothy S. ("Timothy") from 1982–1985, beginning when Timothy was eleven years old. The defendant was a friend of Timothy's parents and Timothy visited his house on numerous occasions. On several of those occasions the defendant placed his penis in Timothy's anus, put his penis in Timothy's mouth or took Timothy's penis into his mouth.

stantially handicapped its prosecution of this case.

In the second case, the defendant pled guilty to charges stemming from offenses related to two sexual assaults of Dennis S. ("Dennis"), age eight, committed in 1982 and 1983. Here also the defendant was friends with the victim's parents and assaulted the child when they were alone in the defendant's residence. Prior to the assault O'Brien showed Dennis pornographic pictures. He then placed his penis into Dennis's mouth and told him not to tell about the sexual acts. On October 31, 1985, O'Brien was sentenced to a total of 3½ to 15 years['] imprisonment for both the offenses. He was paroled in April of 1990.

T.C.O., 11/5/02, at 4.

¶ 8 The trial court concluded that, although the facts regarding the two prior convictions were similar to the facts in the instant circumstances, "they are not sufficient to establish a *signature* for O'Brien," citing *Commonwealth v. Hawkins*, 534 Pa. 123, 626 A.2d 550 (1993), and *Commonwealth v. Perkins*, 519 Pa. 149, 546 A.2d 42 (1988). T.C.O. at 3 (emphasis in original). The court also indicated that "[t]he facts and circumstances here are not unlike the facts and circumstances in many cases of sexual assaults against children" and, therefore, "none of the defendant's actions here is so similar that proof of one tends to establish proof of the other." *Id.* The court also concluded that the prior offenses, which occurred in 1982 and 1985 were too remote in time to be relevant to the present offense, even though O'Brien was not paroled until April of 1990.

■ ¶ 9 Our court has set forth the law with regard to the admission of prior bad acts as follows:

Evidence of distinct crimes is not admissible against a defendant being prosecuted for another crime *solely* to show his bad character and his propensity for committing criminal acts. However, evidence of other crimes and/or violent acts may be admissible in special circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him to be a person of bad character.

*Horvath*, 781 A.2d at 1245. These other purposes include *inter alia* "(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the other; or (5) the identity of the person charged with the commission of the crime on trial." *Commonwealth v. Collins*, 550 Pa. 46, 703 A.2d 418, 422–23 (1997). *See also Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491, 497 (1988) (stating that the "list of 'special circumstances' is not exclusive").

¶ 10 The thrust of the Commonwealth's argument is that the facts of the prior crimes are so similar to the present facts that they show a common scheme or plan. Thus, the details of the crimes must be examined for shared similarities, *i.e.*, similarity of victims, location where the crimes occurred. *See Commonwealth v. Newman*, 528 Pa. 393, 598 A.2d 275, 279 (1991) (stating that a commonality of roles and situs establishes a common design and that the court is to look at the shared details, which includes the perpetrator's actions in addition to the location of the crimes and commonality of the relationship between the defendant and the victims). *See also Commonwealth v. Elliott*, 549 Pa. 132, 700 A.2d 1243, 1250 (1997) (allowing in testimony to show common scheme, plan or design that included information about three prior assaults with sexual overtones on three white women in their twenties in the early morning hours after each woman found herself alone with defendant).

¶ 11 Specifically, the Commonwealth sets forth the following to support its assertion that similar facts comprised the prior and present offenses:

All of the charges stemmed from defendant's sexually assaulting young boys. All of the victims shared similar personal characteristics. Each boy was white, between the ages of eight and eleven years old, and each boy knew defendant because his parents were friends of defendant. Each crime was committed after defendant was alone with his victim, in defendant's home and often in his bedroom, after defendant had shown pornography to the victim. Each crime involved deviate sexual intercourse—either oral or anal—and, in each case, defendant instructed the victim not to tell anyone what had occurred.

Commonwealth's brief at 12.

¶ 12 Moreover, in response to the trial court's determination that the facts were insufficient to establish a "signature," the Commonwealth notes that both *Hawkins* and *Perkins*, the cases relied upon by the trial court, were cases in which the evidence of another crime was to be used to identify the defendant, while here identity is not at issue because the complainant will identify O'Brien as the individual who assaulted him. Rather the Commonwealth asserts that its use of the evidence of O'Brien's prior convictions will counter the attacks on the victim's credibility, especially in light of the five year span between the assault and the victim's report to his therapist.

¶ 13 We agree with the Commonwealth that both *Perkins* and *Hawkins* are distinguishable from the instant matter.[3] In those cases, the relevance of that evidence was to be used to identify the perpetrator, while here the admission of the evidence of the prior crimes was relevant to establish a common scheme, plan or design and, thus, bolster the victim's credibility. Moreover, we find that the factual similarities here are as specific as those described by the Supreme Court in *Elliott, supra* to show common scheme, plan or design. *See also Commonwealth v. Miller*, 541 Pa. 531, 664 A.2d 1310 (1995) (evidence that defendant lured other victims of similar race and weight into his car, drove to remote areas and forced sex upon them, beat them and killed or attempted to kill them was admissible to prove common scheme, plan or design). Moreover, we find that the trial court's recognition that there were factual similarities between the prior and present offenses, but its rejection of the fact that the circumstances did not estab-

---

**3.** In *Perkins*, in order to identify the perpetrator of a burglary and rape (charged crime), the Commonwealth sought to introduce facts about a break in (uncharged crime) at a house located two blocks from the house where a burglary and rape of an eighteen year old woman took place. The two incidents occurred within a few hours of each other. Although the Supreme Court noted that the time lapse and geographic distance did not prohibit "the introduction of evidence of the uncharged crime, ... the dissimilarity of methodology did." *Id.* at 45. Thus, the court held that the admission of the evidence of the defendant's commission of a crime where the methodology was not similar was not permissible.

In *Hawkins*, the Supreme Court held that the defendant was entitled to a new trial because the admission of evidence about a prior third-degree murder conviction was allowed into evidence in defendant's trial on a first degree murder charge. The court noted that although the Commonwealth listed four categories of similarities, there were many dissimilarities, most important of which was that the prior murder to which the defendant pled guilty was accidental while the second murder he was charged with was intentionally committed. Therefore, the evidence of the prior murder was inadmissible to identify the defendant as the perpetrator at the first degree murder trial.

lish a "signature" was incorrectly based solely on O'Brien's actions, not on the factual similarities of the incidents in their entirety. *See Newman* (requiring the court to examine the shared similarities in the details of each crime and not just focus on the acts performed by the perpetrator). *See also Commonwealth v. Smith*, 431 Pa.Super. 91, 635 A.2d 1086, 1089 (1993) (stating that relevant to a finding of common scheme or plan, the court must examine "the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator").

¶ 14 Next, we must address whether the prior crimes are too remote in time to be relevant. The court in *Newman* indicated "that remoteness in time between distinct offenses[ ] is but another factor to be considered...." *Id.* at 279. Moreover, in *Miller*, the defendant argued that his rape and murder of two women several years earlier could not be used in the prosecution for rape and attempted murder of another woman, because the lapse in time negated the theory that the different offenses were part of a common scheme, plan or design. In concluding that "[g]iven the striking similarity of the three incidents, the fact that the three attacks occurred over a five year period is not remote enough to render the attack on [the third victim] inadmissible," *id.* at 1319, the Miller court explained:

> While remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under this theory, the importance of the time period is inversely proportional to the similarity of the crimes in question. *Commonwealth v. Shively*, 492 Pa. 411, 416, 424 A.2d 1257, 1259 (1981).... *Commonwealth v. Donahue*, 519 Pa. 532, 544, 549 A.2d 121, 127 (1988) (evidence of death of child in defendant's care

three years earlier admissible in trial for murder of child to refute defense of accident). *See People v. Archerd*, 3 Cal.3d 615, 91 Cal.Rptr. 397, 477 P.2d 421 (1970) (evidence of murders committed in 1947, 1958 and 1960 admissible to show intent in prosecution for murders committed in 1956, 1961 and 1966 where all murders were committed by insulin injection); *Benefiel v. State*, 578 N.E.2d 338 (Ind.1991), *cert. denied*, 504 U.S. 987, 112 S.Ct. 2971, 119 L.Ed.2d 591 ... (1992) (similar sexual assaults committed six and eight years earlier admissible to show common scheme); *State v. Coen*, 382 N.W.2d 703 (Iowa Ct.App.1985) (evidence of similar sexual assaults five years earlier admissible to show intent to commit sexual assault as an element of the crime).

*Miller*, 664 A.2d at 1319. *See also Commonwealth v. Luktisch*, 451 Pa.Super. 500, 680 A.2d 877 (1996) (holding that evidence of sexual molestation by defendant that occurred fourteen years prior to the crime presently charged was admissible under the common, scheme, plan, design or course of conduct exception to the general rule that evidence of uncharged acts is inadmissible against defendant).

¶ 15 Furthermore, in response to O'Brien's argument that the elapsed time between the earlier crimes and the present one is too remote, *i.e.*, 1982–1985 compared to 1996, the Commonwealth notes that O'Brien was incarcerated until 1990. Therefore, the Commonwealth suggests that the relevant time period is not eleven to fourteen years, but rather only five years, citing *Commonwealth v. Rush*, 538 Pa. 104, 646 A.2d 557 (1994) (stating that eight years separating the commission of the two crimes is not considered too remote because defendant was incarcerated for much of the time). We agree.

¶ 16 Lastly, we must consider whether the probative value of the evidence of the prior crimes is outweighed by the potential prejudice on the trier of fact, here the trial judge. In the trial court opinion, the court merely stated that "[t]he prejudicial effect of other crimes evidence by definition outweighs it probative value." T.C.O. at 5. We disagree.

■ · ¶ 17 "As with any evidentiary ruling, the trial court should balance the relevancy and evidentiary need for the evidence of distinct crimes against the potential for undue prejudice." *Commonwealth v. Gordon*, 543 Pa. 513, 673 A.2d 866, 870 (1996). In *Gordon*, the Commonwealth sought the admission of the defendant's conviction of similar crimes in its prosecution on two indecent assault charges. The Supreme Court found that the defendant's prior conduct was relevant to prove, *inter alia*, a common scheme or plan and then discussed the prejudicial effect on the defendant as follows:

> Whether relevant evidence is unduly prejudicial is a function in part of the degree to which it is necessary to prove the case of the opposing party. Here, the Commonwealth was required to prove that a non-consensual touching occurred, the purpose of which was sexual gratification. Gordon denies that the touching occurred, and since the uncorroborated testimony of the alleged victim in this case might reasonably lead a jury to determine that there was a reasonable doubt as to whether Gordon committed the crime charged, it is fair to conclude that the other crimes evidence is necessary for the prosecution of the case.

> Without doubt, the other crimes evidence would be prejudicial to Gordon. That is what it is designed to be. On the facts of this case, however, it is not unduly prejudicial, as it is required for the Commonwealth's case. It was an abuse of discretion for the trial court to deny the Commonwealth's motion for the admission of this evidence.

*Id.* at 870 (footnote omitted).

¶ 18 Additionally, the fact that O'Brien has chosen to be tried by a judge rather than a jury minimizes, if not eliminates, the potential for prejudice. *See Commonwealth v. Lambert*, 765 A.2d 306, 362 (Pa.Super.2000) (stating that "where a criminal case proceeds before a judge sitting without a jury, there is a presumption that his knowledge, experience and training will enable him to disregard inadmissible evidence and other improper elements"); *Commonwealth v. Miller*, 426 Pa.Super. 410, 627 A.2d 741, 749 (1993) (stating that "when the court is sitting as fact-finder, it is presumed that inadmissible evidence is disregarded and that only relevant and competent evidence is considered").

¶ 19 Based on the extensive case law we have reviewed, we are compelled to conclude (1) that the evidence of the prior crimes and the present charge satisfy the requirements of the common scheme, plan or design exception to the general rule that evidence of one crime is inadmissible against a defendant being tried for another crime, (2) that the crimes are not too remote in time, and (3) that the probative value of the evidence outweighs the prejudicial effect. We, therefore, find that the trial court abused its discretion by precluding the admission of evidence of O'Brien's prior bad acts and reverse the order so holding.

¶ 20 Order reversed.