J-A10007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARK C. WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 1842 EDA 2017 |

Appeal from the Judgment of Sentence April 11, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010705-2013

BEFORE:  GANTMAN, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 16, 2019**

Mark C. Williams appeals from his judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after a jury found him guilty of aggravated indecent assault,[1] unlawful contact with a minor,[2] endangering the welfare of children,[3] indecent assault,[4] and corruption of minors.[5]  Upon careful review, we affirm.

We summarize the relevant facts and procedural history as follows. E.B., Williams's great-niece, was born in December 1998.  When she was

---

[1] 18 Pa.C.S.A. § 3125(a)(7).

[2] 18 Pa.C.S.A. § 6318(a)(1).

[3] 18 Pa.C.S.A. § 4304.

[4] 18 Pa.C.S.A. § 3126(a)(7).

[5] 18 Pa.C.S.A. § 6301.

between three and six years old, she visited Williams multiple times at his job at a religious school at 56th and Vine Street in Philadelphia. On one occasion, E.B. wanted to tell Williams about her toy. Williams lifted E.B. onto his lap and slid his hand under her jean dress. He proceeded to touch her vagina through the outside of her underwear. When she told him, "my mom and dad told me wasn't nobody supposed to touch me there," he told her it was okay. N.T. Trial, 12/7/16, at 117. She proceeded to talk about her toy. As she did, Williams put his hand inside her underwear where he touched the outside and then the inside of E.B.'s vagina. *Id.* Williams touched E.B. in this way on two or three occasions. E.B. did not report the incidents until 2013 when she told her mother.

In 2006, M.Y., Williams's great-nephew, accused Williams of sexually abusing him. At the time of the incident, Williams shared a bunk bed with M.Y. In 2008, he pled no contest to indecent assault of a minor less than thirteen years old. He was sentenced to two years' probation and he was required to register as a sex offender.

In 2013, E.B. told her mother, E.,[6] about the incidents with Williams; E.B. was 14 at the time. E. testified that she was talking to her sister about Williams and M.Y. when E.B. informed her of the touching. E. testified that Williams had touched her too, starting when she was in first or second grade and continuing until she was in fourth or fifth grade. Williams and E. were

---

[6] E.B.'s mother shares initials with her daughter. We refer to her as E. to avoid confusion.

living together in a shared family house. E. testified that she would be on top of Williams and he would touch her vagina through the outside of her panties. *Id.* at 174.

On December 12, 2016, a jury found Williams guilty on all charges. The trial court sentenced him to an aggregate term of nine to eighteen years' imprisonment. The trial court denied post-sentence motions and Williams timely filed a notice of appeal. The court ordered a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal.[7]

Williams raises the following issues for our review:

1. Whether the trial court abused its discretion by it rulings granting the Commonwealth's Rule 404(b) motion regarding Mr. [Williams's] alleged sexual assault against E. 15 to 20 years earlier . . . and prohibiting the defense from introducing the evidence that the other persons who was the subject of the Rule 404(b) motion, M.Y., had been charged with child sexual abuse prior to the charges against the defendant, thereby depriving Mr. Williams of his fundamental due process right to a fair trial and to present a defense?

2. Whether Commonwealth counsel committed prosecutorial misconduct in her closing argument by making several improper expressions of opinion that invaded the province or the jury–thereby resulting in violation of Mr. [Williams's] due process right to a fair trial under the United States and Pennsylvania Constitution?

3. Whether the trial court's sentence of 9 to 18 years was manifestly unreasonable and therefore constituted an abuse of discretion?

Brief of Appellant, at 2.

_____

[7] The trial judge was elected to this Court, thus, there was no trial court opinion.

- 3 -

Williams first claims that the trial court erred when it admitted evidence that Williams touched E.'s vagina 15 to 20 years before the trial. He also claims the court improperly refused to allow Williams to bring in evidence that his accuser, M.Y., had also been accused of indecent prior to reporting Williams.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002) (quoting *Commonwealth v. Stallworth*, 781 A.2d 110, 117 (Pa. 2001)). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa. Super. 2005).

Generally, evidence of prior bad acts is not admissible to prove a person's character in order to show that the person acted in accordance with that character on a particular occasion. Pa.R.E. 404(b)(1). However, such evidence can be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). In criminal cases, the probative value of evidence of prior bad acts, even when used for a proper purpose, must still outweigh its potential for unfair prejudice. *Id.* "'Unfair prejudice' means a tendency to suggest a

- 4 -

decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." **Commonwealth v. Dillon**, 925 A.2d 131, 141 (Pa. 2007) (quoting Pa.R.E. 403, Comment).

Here, the trial court permitted the prior bad acts evidence to show a common plan or scheme. N.T. Trial, 12/7/16, at 235. To determine whether the common plan or scheme exception applies, the trial court must assess the similarities and circumstances of the two incidents to determine whether they constitute a "signature." **See Commonwealth v. Tyson**, 119 A.3d 353, 364 (Pa. Super. 2015). The circumstances need not be identical, but there must be a "logical connection between them." **Commonwealth v. Ivey**, 146 A.3d 241, 253 (Pa. Super. 2016). The court can look to factors such as age, race, relationship, and the specific acts that are committed. **See Commonwealth v. Lukitsch**, 680 A.2d 877 (Pa. Super. 1996).

In **Commonwealth v. O'Brien**, 836 A.2d 966 (Pa. Super. 2003), we reversed a trial court's ruling excluding evidence of the defendant's prior assault of two minor boys where the defendant was accused of sexually assaulting a third minor boy. In **O'Brien**, we found a logical connection because the victims were within the same age range, each boy's parents were friends of the defendant, and each boy had similar personal characteristics. **Id.** at 970.

In **Commonwealth v. Aikens**, 990 A.2d 1181 (Pa. Super. 2010), Aikens was accused of sexually abusing his biological daughter. We held that

the trial court properly admitted evidence that Aikens had previously sexually abused a different biological daughter as proof of his common scheme, plan, or design because the "fact pattern involved in the two incidents was markedly similar." **Id.** at 1185. We found a signature because both victims were Aikens's daughters, he mimicked sexual intercourse to gratify himself, both occurred at night after watching pornographic movies, and the sexual assaults occurred in bed. **Id.** at 1185-86.

Here, the victims all had similar relationships with Williams, a great-nephew, a niece, and a great-niece. All the acts consisted of touching of the genitals without penile penetration. All victims were approximately the same age when abused. We find these facts sufficiently similar for them to be attributable to a common plan or scheme. Thus, the trial court did not err when it allowed the Commonwealth to present the prior bad act evidence. Pa.R.E. 404(b)(2).

Furthermore, the trial court did not abuse its discretion when it refused to allow Williams to inform the jury that, before M.Y. accused Williams of indecent assault, M.Y. had been accused of indecent assault. The court found that the evidence was not relevant and likely to confuse the jury by creating a "trial within a trial." N.T. Trial, 12/8/16, at 72-75, 226. Excluding evidence that is irrelevant, confusing, or prejudicial is within the sound discretion of the trial court and will not be disturbed lightly. **Sprague v. Walter**, 656 A.2d 890, 918 (Pa. Super. 1995). Furthermore, collateral estoppel prevents a

defendant from raising an issue the court has dispensed with on a previous occasion. *See Commonwealth v. Holder*, 805 A.2d 499, 502 (Pa. 2002). After Williams pled no contest in 2008, a court found him guilty of sexually abusing his great-nephew. If he wanted to contest the charge, he should have done so in 2008. The trial court determined that M.Y.'s criminal history was irrelevant and potentially confusing to the jury. The trial court did not abuse its discretion in so finding.

Williams next argues that that the prosecutor committed prosecutorial misconduct by giving her personal opinion on Williams's guilt.

> With specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that '[i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made.' Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial.

*Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (citation omitted). A prosecutor has reasonable latitude to use logical force and vigor when presenting a case to the jury. *Commonwealth v. Rayner*, 153 A.3d 1049. Prosecutorial misconduct does not occur unless the effects of the comments prejudice the jury "by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict." *Commonwealth v. Paddy*, 800 A.2d 294, 316 (Pa. 2002). The prosecutor may not give personal opinions

of the credibility of witnesses, but may still comment on their credibility. *Judy*, 978 A.2d at 120.

Here, the prosecutor questioned the credibility of the Williams's witnesses, who had opined at trial that Williams was a law-abiding citizen. Part of Williams's closing argument reiterated that theory. In response, the prosecutor argued,

> to hear that those witnesses testified under oath that knowing that this defendant was accused of sexually abusing his niece when she was a child and they knew that he was a man that had already pled no contest and was found guilty of similar allegations for indecently assaulting his young nephew for his own personal sexual gratification is somebody that they considered to be a law-abiding member of the community is just as soul crushing to any other person in this world[.]

N.T. Trial, 12/12/16, at 86. In context, the comment does not prejudice the jury as to prevent Williams from receiving a fair trial. *See Judy*, 978 A.2d at 119. The prosecutor does not give an opinion of whether Williams is guilty of the current crime; the prosecutor is highlighting Williams's previous conviction for indecent assault and the fact that the character witnesses still considered him law-abiding even knowing those facts. The prosecutor is permitted to comment on the credibility of the character witnesses in such a fashion. *See id.* at 120.

Williams's last appellate claim implicates the discretionary aspects of his sentence. Such a challenge is not appealable as of right. Rather, an appellant must petition for allowance of appeal pursuant to 42 Pa.C.S.A. § 9781. *Commonwealth v. Colon*, 102 A.3d 1033, 1042 (Pa. Super. 2014).

> Before we reach the merits of this issue, we must engage in a four[-]part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Id.* at 1042-43, quoting *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013).

Here, Williams filed a post-sentence motion for reconsideration of his sentence raising excessive sentencing issues, followed by a timely notice of appeal. In addition, he has included in his brief a concise statement of reasons relied upon for appeal pursuant to Pa.R.A.P. 2119(f). Accordingly, we must now determine whether Williams has raised a substantial question for our review.

Williams claims that his aggregate sentence was excessive and unreasonable, thus raising a substantial question. We disagree. This court does not accept bald assertions of sentencing excessiveness. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). Moreover, "[t]he imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). We have found such circumstances when a sentence is *prima facie* excessive based on the criminal conduct involved. *See Commonwealth v. Dodge*, 77 A.3d

1263, 1271 (Pa. Super. 2013) (finding virtual life sentence for theft-related crimes excessive and raised substantial question).

Here, there is no facially excessive sentence. The jury convicted Williams of the indecent assault of minor and related offenses. At trial, the mother testified that Williams did the same thing to her when she was a child. Furthermore, Williams had previously been found guilty of indecent assault of another child, M.Y. A sentence of nine to eighteen years in prison is not on its face excessive under these circumstances. Thus, Williams has not raised a substantial question and we do not have jurisdiction to consider this claim. *See Colon*, 102 A.3d at 1033.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/16/19