**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| EMMANUEL TAYLOR | : | |
| | : | |
| Appellee | : | No. 159 WDA 2022 |

Appeal from the Order Entered January 31, 2022
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0000917-2018

BEFORE: STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.: **FILED: APRIL 14, 2023**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Blair County Court of Common Pleas, which granted the oral motions *in limine* raised by Appellee, Emmanuel Taylor, prior to the commencement of his trial. The Commonwealth appealed pursuant to Pa.R.A.P. 311(d) and certified that the order substantially handicapped the prosecution.[1] We affirm in part, reverse in part, and remand for further

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that the Commonwealth's certification alone is sufficient to establish our jurisdiction over the interlocutory order. ***See Commonwealth v. Moser***, 999 A.2d 602, 605 (Pa.Super. 2010), *appeal denied*, 610 Pa. 595, 20 A.3d 485 (2011) (noting Superior Court may not inquire into grounds for Commonwealth's good faith certification). Accordingly, this appeal is properly before us for review. ***See Commonwealth v. Cosnek***, 575 Pa. 411, 421, 836 A.2d 871, 877 (2003) (stating Rule 311(d) applies to pretrial ruling that results in suppression, preclusion or exclusion of Commonwealth's evidence).

proceedings.

The trial court set forth the facts and procedural history of this case as follows.

> The facts in this case, as taken from the testimony from the motion to suppress held January 8, 2019, and the police criminal complaint filed of record, are as follows:
>
> On April 1, 2018, the codefendant, Darien Riddick, was driving a vehicle southbound on Interstate 99. He passed Pennsylvania State Trooper [Rusty] Hays, who was on his way to work in an unmarked police cruiser, traveling between 70 and 80 mph. Hays testified the codefendant's vehicle approached him traveling at a high rate of speed from behind and failed to signal when going from the right[-]hand lane to the left[-]hand lane, and after the pass failed to signal to move from the left-hand lane back to the right-hand lane.
>
> The trooper effectuated a traffic stop. He approached the vehicle on the driver's side; the driver put the window down, and the trooper immediately detected the smell of marijuana coming from the vehicle as he spoke with the driver. He suspected Riddick of driving while under the influence of a schedule I controlled substance. He continued to detect the odor of marijuana coming from the vehicle and called for another unit so he could perform a search of the vehicle. He performed what he characterized as a probable cause search of the vehicle searching specifically for marijuana. He characterized this search as being based off of probable cause of plain view/plain smell of marijuana. While searching the vehicle he located a clear plastic jug in the middle of the rear seat of the vehicle. The jug was wrapped in a winter beanie style hat. Inside that jug were two bags of a green leafy substance suspected to be marijuana. According to the police criminal complaint, the marijuana in the two bags weighed [between] 21 and 27 grams. Continuing to search the vehicle, [Trooper Hays] discovered a silver and black 9 mm Ruger pistol underneath the driver's seat.
>
> There were two individuals in the vehicle and the passenger,

> [Appellee], was seated in the backseat driver's side. The trooper testified that the firearm was accessible by both the driver and the backseat passenger. A records check revealed that the firearm was stolen and that the backseat passenger, [Appellee], had Maryland criminal history indicating a felony possession with intent to distribute a controlled substance offense from January, 2010, making him ineligible to possess a firearm or to be licensed to carry a firearm.
>
> [Appellee] was charged with one count of manufacture, deliver or possess with intent to deliver a controlled substance under 35 P.S. § 780-113(a)(30) and one count of criminal conspiracy to commit the same pursuant to 18 Pa.C.S.A. § 903(a)(1); one count of criminal conspiracy to engage in receiving stolen property, 18 Pa.C.S.A. § 903(a)(1) with object crime 18 Pa.C.S.A. § 3925(a); one count of receiving stolen property 18 Pa.C.S.A. § 3925(a); one count of possession of firearm prohibited under 18 Pa.C.S.A. § 6105(a)(1); one count of firearms not to be carried without a license under 18 Pa.C.S.A. § 6106(a)(1); one count of marijuana, small amount for personal use 35 P.S. § 780-113(a)(31)(i); and one count [of] use and possession of drug paraphernalia under 35 P.S. § 780-113(a)(32).
>
> The codefendant, Mr. Riddick, was charged with the same offenses except that he did not have a criminal record, and therefore was not charged with the offenses about firearm possession. The Commonwealth offered him ARD after he gave them a proffer that the firearm was not his.
>
> [Appellee] filed a motion to suppress, which was denied April 11, 2019.... On September 28, 2020, the firearms charges were severed from the other charges for trial.
>
> The matter was convened for jury trial on October 29, 2020. Before the trial, on October 28, 2020, the defense made a motion for authorization to issue an out of state subpoena and motion for continuation of trial. Defense counsel alleged that [Mr.] Riddick was a material exculpatory witness whose testimony was now necessary at trial. Defense counsel alleged, and had marked as defendant's Exhibit 1, a statement purportedly made by [Mr.] Riddick.

In that statement Mr. Riddick purportedly said that the firearm in the vehicle did not involve [Appellee] and he was willing to speak up and take full responsibility for the firearm in this matter. Riddick was not available for trial that day, and upon request of [Appellee], by order dated October 29, 2020, the court continued the trial.

Subsequently, in a document docketed in [Mr.] Riddick's case… [Mr. Riddick] indicated his intent to assert his constitutional right under the Fifth Amendment not to testify in [Appellee's] trial.

[Appellee's] second jury selection was January 24, 2022, with trial scheduled January 31, 2022-February 1, 2022.

On January 31, 2022, the impaneled jurors were present and the jury convened. Defense counsel challenged the Commonwealth's intent to call the owner of the gun that was found in the case to testify the gun was stolen.

The defense submitted that the fact that the gun was stolen was not relevant to the case, in which the charges were only person not to possess a firearm and carrying a firearm without a license, the other charges having been previously severed.

The Commonwealth argued that because the crime was a crime of possession the Commonwealth should be able to put on the evidence of to whom the item in question legally belonged.

The defense argued that the Commonwealth was "…getting evidence that a gun was stolen to try to 'back door' to say that he ([Appellee]) must have possessed it because it was a stolen gun and somebody is guilty of stealing the gun or something. That tends to incriminate him and Mr. Riddick for something they are not being tried for this time." (N.T. Trial, 1/31/22, at 4).

The court considered the arguments of the parties and applied Pennsylvania Rule of Evidence 403. The court determined that whence the firearm came is not relevant to the elements of the offenses. The court found that

> testimony that the gun was stolen would be unduly prejudicial to this defendant because the jury would or could make the leap or speculate about whether it was this defendant who stole the weapon from the person that the Commonwealth was establishing in testimony as its rightful owner. The court noted that the test was not just whether it would be prejudicial to the defendant, but whether it [would] be unduly prejudicial, and since it would raise the specter of the defendant potentially being assigned responsibility for a crime [for] which he was not yet on trial, the court excluded the relevant evidence because its probative value was outweighed by a danger of unfair prejudice, or confusing or misleading the jury.

(Trial Court Opinion, 1/30/23, at 1-6) (citation formatting provided).

Appellee also made an oral motion *in limine*, challenging the authenticity of the certified copy of Appellee's prior record from the court in Frederick, Maryland. Appellee observed that the document did not contain a seal, and it was not double certified. (N.T. Trial, 1/31/22, at 5-6). The Commonwealth, who bore the burden of proving that the document was properly authenticated in order to be admissible, explained the following:

> As to the certified copy, the Frederick Maryland Court summary that I am holding here we discussed in chambers, I would submit under Rule 902(4), certified copies of public records, this would come in as well independently. It is a copy of an official record or a copy of a document that was recorded or filed in the public office as authorized by law. If the copy is certified as correct by, A, the custodian or another person authorized to make the authorization …

(***Id.*** at 7). In response to the court's question, the Commonwealth conceded that it did not have a custodian or other person authorized to make the certification here today, but insisted that "it is certified by that person on the document itself and…it is a self[-]authenticated document. That is what is

intended by that rule, this exact rule that we have here." (***Id.***) The court explained that under its interpretation of Rule 902(4), the document can be authenticated either by the custodian present and testifying from the witness stand under subsection (A) or under subsection (B), by a certificate that complies with Rule 902(1), (2), or (3), a statute or rule prescribed by the Supreme Court. (***Id.*** at 8). Ultimately, the court found:

> The paperwork produced by the Commonwealth from the Circuit Court for Frederick County captioned case summary, stamped received October 19th, 2020 District Attorney's Office and stamped below true copy test Sandra K. [Dalton], clerk, does not meet the requirement under Pennsylvania law for double certification and the [c]ourt at this time will prevent the Commonwealth from producing it in its case in chief.… So what that means is this is a two-day trial. You still have the opportunity to get somebody here from Maryland. You're not barred. You're not completely out of court on that charge but unless you have somebody come in, I'm not sure where you're going to stand in regards to after you rest your case in chief….

(***Id.*** at 19).

The Commonwealth then notified the court that "without that information [it] would be substantially prejudiced in proceeding in this matter and we would be certifying for appeal" pursuant to Rule 311(d). (***Id.*** at 20). The court questioned the certification of appeal, noting that the trial in this case had already begun, with the jury having been impaneled. After a recess to research the issue, the court ruled that the case was "not in a posture for [Rule 311(d)] to be invoked because the Commonwealth still has an opportunity to present a witness in regards to the [c]ourt's ruling. So it is

not…prevented from proceeding forward….” (***Id.*** at 24). Therefore, no appeal having been filed, the court swore the jury. Once the Commonwealth filed a formal written notice of appeal, the court discontinued the trial.

After receiving the notice of appeal, the trial court issued an order docketed February 16, 2022, directing the Commonwealth to file and serve a statement of errors complained of on appeal within 21 days of the date of the order. The Commonwealth failed to timely file its concise statement and the trial court concluded that the issues were waived on appeal. Nevertheless, this Court, in accordance with ***Commonwealth v. Grohowski***, 980 A.2d 113, 115 (Pa.Super. 2009), retained panel jurisdiction and remanded for the trial court to prepare a supplemental Rule 1925(a) opinion addressing all properly preserved issues. We directed the Commonwealth to file a supplemental brief within 30 days of receipt of the court's supplemental opinion; Appellee would have 30 days thereafter to file a responsive supplemental brief. The trial court filed its supplemental Rule 1925(a) opinion on January 30, 2023. Although the Commonwealth did not file a supplemental brief in response to the trial court's supplemental opinion, its principal brief addresses the issues raised, so we will consider the merits of the Commonwealth's appeal.

The Commonwealth raises four issues for our review:

> I. Whether the trial court abused its discretion in disallowing testimony regarding ownership of the firearm at issue, specifically, testimony that the firearm at issue belonged to an individual who had reported the firearm stolen, where the defendant was charged with 18 Pa.C.S.A. § 6105 and the only other individual in the car was not a person not to

> possess a firearm.
>
> II. Whether the [c]ourt erred in not permitting the Commonwealth to admit, under 225 Pa. Code 902(4) (pertaining to self-authenticating document), a Maryland Court Docket Sheet Summary for [Appellee's] prior conviction in Maryland where the document was certified by the clerk of courts of Frederick County, Maryland.
>
> III. Whether the [c]ourt abused its discretion in disallowing National Crime Information Center (NCIC) criminal history reports under 42 Pa. C.S.A. § 6108.
>
> IV. Whether the [c]ourt abused its discretion in swearing in the jury after the Commonwealth notified the [c]ourt on the record that it intended to seek an immediate interlocutory appeal under Pennsylvania Rule of Appellate Procedure 311.

(Commonwealth's Brief at 4-5).

In its first issue, the Commonwealth argues that the trial court abused its discretion by granting Appellee's motion *in limine* to prohibit the Commonwealth from calling as a witness the owner of the firearm recovered from the vehicle. The Commonwealth claims that the fact that the firearm was stolen was crucial to its case of constructive possession where it was attempting to prove that Appellee possessed the firearm rather than Mr. Riddick, the driver of the vehicle. The Commonwealth asserts that because Mr. Riddick was not prohibited from purchasing a firearm, the fact that this firearm was stolen makes it more likely that Appellee was the individual who possessed it, because as a result of prior convictions, he would have been prohibited from purchasing a firearm. The Commonwealth insists that this evidence would not unfairly prejudice Appellee. We disagree.

Our standard of review of a trial court's admission or exclusion of evidence is well established and very narrow. When an appellant challenges the ruling on a motion *in limine*, our scope of review is limited to the relevant pretrial hearing transcripts. ***Commonwealth v. Mattis***, 252 A.3d 650, 654 (Pa.Super. 2021). In conducting our review, we apply an abuse-of-discretion standard of review. ***Commonwealth v. Moser***, 999 A.2d 602, 605 (Pa.Super. 2010), *appeal denied*, 610 Pa. 595, 20 A.3d 485 (2011) (citation omitted). The admissibility of evidence is left to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. ***Id.*** Our scope of review in cases where the trial court explains the basis for its evidentiary ruling is limited to an examination of the stated reason. ***Commonwealth v. Stephens***, 74 A.3d 1034, 1037 (Pa.Super. 2013). "We must also be mindful that a discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." ***Commonwealth v. O'Brien***, 836 A.2d 966, 968 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004).

Evidence is generally admissible if it is relevant, meaning that it is probative of a material issue, and if the probative value is not outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403;

***see also*** Pa.R.E. 401, 402. "'[U]nfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." ***Commonwealth v. Hairston***, 624 Pa. 143, 159, 84 A.3d 657, 666 (2014), *cert. denied*, 574 U.S. 863, 135 S.Ct. 164, 190 L.Ed.2d 118 (2014) (quoting Pa.R.E. 403, Comment).

Here, the trial court explained:

> In this case, to introduce testimony that the firearm was stolen introduces the same prejudice in regard to other criminal acts that the severance excluded. Furthermore the Commonwealth's theory invites assumption and speculation that is outside the proper function of the jury. The jury might speculate according to the Commonwealth's theory, but they might assume that the driver is a good person and conclude that [Appellee] is a bad person, and make a decision on that basis rather than upon the Commonwealth's proof of the elements of the crime.
>
> [Appellee] will stand separate trial for receiving stolen property. The testimony is properly admitted at that trial, where it is part of the Commonwealth's required proof of the elements of receiving stolen property, but not in this trial, where it merely serves to smear [Appellee] with a speculative theory that the gun did not belong to the driver merely because he had not yet ever been convicted of a crime which would make him a person not to possess a firearm.
>
> As counsel for [Appellee] said, "…they are getting evidence that the gun was stolen to try to back door to say he must have possessed it because it was a stolen gun and somebody's guilty of stealing the gun or something that tends to incriminate him and (the codefendant) for something they are not being tried for this time." (N.T. Trial at 4).
>
> After its analysis, the court concluded the probative value of the allegation that the firearm was stolen or belonged to another person was outweighed by danger of inuring unfair

> prejudice to [Appellee] or misleading the jury about what issue was at trial. The court fairly excluded this testimony on the grounds of the rule of evidence barring prejudicial testimony and testimony that invites the jury to speculate improperly.

(Trial Court Opinion at 8-9) (citation formatting provided).

Given our deferential standard of review, we accept the trial court's reasoning that the probative value of the proffered evidence that the firearm was stolen or belonged to another person was outweighed by the danger of unfair prejudice to Appellee and the danger of misleading the jury about what issue was at trial. ***See O'Brien, supra***; ***Moser, supra***. Therefore, the Commonwealth's first issue on appeal merits no relief.

In its second issue, the Commonwealth argues that the trial court abused its discretion in not permitting a case summary report from Maryland, which set forth Appellee's prior conviction, to be admitted under Pennsylvania Rule of Evidence 902(4). The Commonwealth claims that the document in question is a certified copy of a record filed in the Circuit Court of Frederick County, Maryland, and contains a "stamp-signature stating: TRUE COPY TEST – Sandra K. Dalton, CLERK." (Commonwealth's Brief at 21). The Commonwealth insists this is sufficient to establish the document as a certified record, and a copy of a publicly filed document which should be self-authenticating and admissible under the language of Rule 902(4). We agree with the Commonwealth's position.

In order for a document to be admissible as evidence it must be

authenticated and it must be relevant. ***See*** Pa.R.E. 901(a) (providing that "[u]nless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is"). Under Pennsylvania Rule of Evidence 902, some types of documents do not require extrinsic evidence of authenticity to be admitted because they are self-authenticating. Rule 902 states, in pertinent part:

> **Rule 902. Evidence That is Self-Authenticating**
>
> The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:
>
> **(1) Domestic Public Documents That Are Sealed and Signed.** A document that bears:
>
> (A) a seal purporting to be that of the United States; any state, district, commonwealth,…a political subdivision of any of these entities; or a department, agency, or officer of any entity named above; and
>
> (B) a signature purporting to be an execution or attestation.
>
> **(2) Domestic Public Documents That Are Not Sealed But Are Signed and Certified.** A document that bears no seal if:
>
> (A) it bears the signature of an officer or employee of an entity named in Rule 902(1)(A); and
>
> (B) another public officer who has a seal and official duties within that same entity certifies under seal—or its equivalent—that the signer has the official capacity and that the signature is genuine.
>
> *     *     *

> **(4) Certified Copies of Public Records.** A copy of an official record—or a copy of a document that was recorded or filed in a public office as authorized by law—if the copy is certified as correct by:
>
> (A) the custodian or another person authorized to make the certification; or
>
> (B) a certificate that complies with Rule 902(1), (2), or (3), a statute or a rule prescribed by the Supreme Court.
>
> A certificate required by paragraph (4)(B) may include a handwritten signature, a copy of a handwritten signature, a computer generated signature, or a signature created, transmitted, received, or stored by electronic means, by the signer or by someone with the signer's authorization. A seal may, but need not, be raised.

Pa.R.E. 902(1), (2), (4).

In ***Commonwealth v. Chapman***, No. 671 MDA 2019, 2019 WL 7174581 (Pa.Super. Dec. 24, 2019) (unpublished memorandum),[2] this Court considered the applicability of Rule 902(4). There, the trial court found that a copy of the defendant's out-of-state prior conviction record was self-authenticating under Rule 902(4). On appeal, this Court concluded that the "certified conviction record is a certified copy, obtained from the New Jersey Superior Court, and contains a certification by the deputy clerk of the New Jersey Superior Court." ***Id.*** at *2. Therefore, we held that the "certified conviction record is self-authenticating, and the trial court did not err in admitting it as evidence." ***Id.***

---

[2] ***See*** Pa.R.A.P. 126(b) (explaining that we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

Here, the Commonwealth sought to admit a copy of Appellee's out-of-state prior conviction record. The document is a public record, and the copy that was sought to be introduced included a stamped signature from the records clerk certifying that it was a true copy. Accordingly, we agree with the Commonwealth that the document qualified as self-authenticating under Rule 902(4). ***See*** Pa.R.E. 902(4); ***Chapman, supra***. Therefore, because the document was relevant and authentic, and there was no other rule of evidence barring its admission, the trial court erred in precluding the Commonwealth from admitting the document.

In its third issue, the Commonwealth argues that the trial court erred in prohibiting the Commonwealth from introducing printouts of Appellee's criminal history record from the NCIC. The Commonwealth claims the NCIC record should have been permitted as a business record under 42 Pa.C.S.A. § 6108, or under the business record exception to the rule against hearsay, set forth at Pennsylvania Rule of Evidence 803(6). The Commonwealth asserts that the evidence fell under the business record exception because Trooper Hayes, who gathered the information from Appellee and generated the report, was going to testify as to what the NCIC is, how it operates, and how reports are generated. Therefore, the Commonwealth insists the trial court abused its discretion in precluding the report.

Nevertheless, we are unable to conduct a meaningful review of this issue because the NCIC report in question is not a part of the certified record. We

may not review that which an appellant, despite bearing the burden to so include, has failed to remit within the certified record. ***See Commonwealth v. Powell***, 598 Pa. 224, 956 A.2d 406 (2008) (explaining that appellate court is limited to only those facts that have been certified in record on appeal and reiterating that Rules of Appellate Procedure place burden on appellant to ensure that record contains what is necessary to effectuate appellate review). Without being able to review the NCIC report itself, we cannot meaningfully assess whether the report should have been admitted as a business record. As such, the Commonwealth is not entitled to relief on this issue.

In its last issue, the Commonwealth argues that the trial court erred in swearing in the jury after the district attorney notified the court that it would be filing a notice of appeal under Rule 311. Although the Commonwealth asserts that the trial court abused its discretion in this regard, the Commonwealth does not request any specific relief from this Court. (***See*** Commonwealth's Brief at 26-30). Given that the court discontinued the trial after the Commonwealth subsequently filed its written notice of appeal, we deem this issue moot. ***See Commonwealth v. Nava***, 966 A.2d 630 (Pa.Super. 2009) (stating issue before court is moot if in ruling upon issue court cannot enter order that has any legal force or effect). Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

Order affirmed in part and reversed in part. Case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/14/2023