J-S40029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH JAMES | : | |
| | : | |
| Appellant | : | No. 2335 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 19, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0003953-2018

BEFORE:   SHOGAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                **FILED OCTOBER 14, 2020**

Appellant, Joseph James, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial conviction for persons not to possess firearms.[1]  We affirm.

In its opinion, the trial court sets forth the relevant facts of this case as follows.

> On April 14, 2018, around 10:30 P.M., Police Officer Allen Reed responded to a police radio call with his partner, Police Officer Brian Waltman, in the area of 3227 West Hilton Street.  Upon arrival, Officer Reed observed the front door to 3227 West Hilton Street was open, but the screen door was shut.  The ground level of the residence was a basement level, meaning in order to go through the front door of the house, one would need to go up a flight of stairs.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1).

Officer Reed observed [Appellant], inside the house, coming down the steps from the second floor to the first floor. Officer Reed ordered, "Police come outside," to which [Appellant] responded by shutting the front door and running inside the residence. Officer Reed and his partner ran up the flight of stairs to get to the front door and proceeded to enter the residence. Officer Reed observed a young woman, Karima Williams, standing in the living room and heard a set of footsteps rapidly going down the stairs beneath him. He radioed other police officers to go towards the back of the house to assist in apprehending [Appellant]. Officer Reed then ran out of the house and down Hilton Street in an attempt to cut [Appellant] off. When Officer Reed arrived at a breezeway close to the house, two other police officers had apprehended [Appellant] and were attempting to cuff him. After assisting in cuffing [Appellant], Officer Reed and the other officers brought [Appellant] back to the front of the house and placed him in the back of a police car.

After [Appellant] was apprehended, Officer Reed and his partner questioned Ms. Williams, who was crying and appeared visibly upset with a high-pitched and upset tone of voice. As Ms. Williams was being questioned, an older woman who identified herself as Judy James, approached the residence. Ms. James was also visibly distraught. She too was crying, upset, and had a high-pitched tone of voice. Further, she had difficulty getting her words out and seemed like she was trying to catch her breath.

Ms. James informed Officer Reed that she was the owner of the property and that she had gotten into a verbal argument with her son, [Appellant]. During the verbal argument, [Appellant] pulled out a firearm, pointed it at her, and began waving it around inside the living room. After making this statement, Ms. James gave verbal and written permission for police officers to search her house. Officer Reed later observed and recovered, from the ground floor, basement area, a black and silver Smith and Wesson .40 caliber firearm which was loaded with 1 live round and a magazine with 11 [live] rounds. The firearm was found on top of a pile of clothes in a lidless storage container. Officer Reed also recovered 1 live round for a .40 caliber firearm in a bedroom in the upstairs portion of the home.

(Trial Court Opinion, filed October 30, 2019, at 1-3) (internal record citations omitted).

Procedurally, the Commonwealth charged Appellant with, *inter alia*, possession of an instrument of crime and persons not to possess firearms. On April 25, 2019, Appellant proceeded to a bench trial only on the persons not to possess firearms charge. At trial, Officer Reed testified about the events of the day in question. The parties also stipulated that Appellant is disqualified from carrying or possessing firearms. Immediately following trial, the court convicted Appellant of persons not to possess firearms.

The court sentenced Appellant on July 19, 2019, to three (3) to six (6) years' incarceration, plus four (4) years' probation. On July 29, 2019, Appellant filed a timely notice of appeal.[2] The court ordered Appellant on August 30, 2019, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). On September 17, 2019, Appellant filed an application

---

[2] "A direct appeal in a criminal proceeding lies from the judgment of sentence." **Commonwealth v. Patterson**, 940 A.2d 493, 497 (Pa.Super. 2007), *appeal denied*, 599 Pa. 691, 960 A.2d 838 (2008). Here, Appellant indicated in his notice of appeal that he was appealing from the April 25, 2019 verdict. Appellant's appeal, however, correctly lies from the judgment of sentence. **See id.** Notwithstanding this technical error, we deem Appellant's appeal as timely filed from the judgment of sentence. **See Commonwealth v. Claffey**, 80 A.3d 780, 782-83 (Pa.Super. 2013), *appeal denied*, 624 Pa. 680, 86 A.3d 231 (2014) (accepting appellant's timely notice of appeal mistakenly listing verdict as appealed-from order, and deeming appellant's appeal as from judgment of sentence).

for an extension of time to file a concise statement due to the unavailability of the notes of testimony. Appellant filed a Rule 1925(b) statement on October 23, 2019.[3]

Appellant raises the following issues for our review:

Was the evidence insufficient to prove Appellant committed the crime of possession of a firearm by a prohibited person because the Commonwealth failed to prove beyond a reasonable doubt the required element of possession[?] That element was not established either in actuality or constructively because the authorities found the gun not on Appellant's person but in the basement of a residence that was not Appellant's where other persons resided who had access to the gun. The evidence was also not sufficient because the Commonwealth did not prove that Appellant exercised dominion and control over the gun or that Appellant acted with the intent to possess the gun[.]

Did the trial court commit an abuse of discretion by overruling objections to testimony from Officer Reed concerning what Judy James told him because Ms. James' comments to the officer constituted inadmissible hearsay and did not meet the requirements of [the] excited utterance exception to the hearsay rule[?] That is because the comments were testimonial in nature given that they were the product of questioning and were not made spontaneously and because there was no ongoing emergency taking place when the alleged comments were made because Appellant had already been apprehended.

_____

[3] The record does not indicate whether the trial court granted Appellant's extension request. In any event, this Court may address the merits of a criminal appeal, where a defendant files an untimely Rule 1925(b) statement, if the trial court had adequate opportunity and chose to prepare an opinion addressing the issue(s) raised on appeal. Here, the trial court issued an opinion addressing Appellant's complaints. Therefore, we decline to consider Appellant's issues waived, even if he filed an untimely Rule 1925(b) statement. *See Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa.Super. 2009) (*en banc*) (allowing for immediate review under these circumstances).

(Appellant's Brief at 3).

In his first issue, Appellant argues the evidence established merely that Appellant was in the proximity of where police found the firearm. Appellant emphasizes that no forensic evidence connected Appellant to the gun, and that the evidence did not indicate the gun in the basement was the same gun Appellant allegedly brandished at Ms. James. Appellant asserts there is no evidence that Appellant lived in Ms. James' house or that anything in the basement was connected to Appellant. Appellant insists other individuals had access to the basement, and that his brief presence in the basement did not establish any association with the gun. Appellant submits the record did not show Appellant knew the gun existed, knew it was in the basement, or intended to control the gun. Appellant contends the Commonwealth presented no testimony from any witness who saw Appellant with a gun. Appellant concludes the trial evidence was insufficient to support his firearms conviction. We disagree.

When reviewing a challenge to the sufficiency of the evidence supporting a conviction, we analyze:

> [W]hether the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to enable a reasonable [fact finder] to find every element of the crime beyond a reasonable doubt. ***See Commonwealth v. Cousar***, 593 Pa. 204, 217, 928 A.2d 1025, 1032 (2007).... In applying this standard, we bear in mind that the Commonwealth may sustain its burden by means of wholly circumstantial evidence; that the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon

were correct; and that the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence. **See id.**, 928 A.2d at 1032–33; **Commonwealth v. Chmiel**, 585 Pa. 547, 574, 889 A.2d 501, 517 (2005)[, *cert. denied*, 549 U.S. 848, 127 S.Ct. 101, 166 L.Ed.2d 82 (2006)].

**Commonwealth v. Reed**, 605 Pa. 431, 436, 990 A.2d 1158, 1161 (2010), *cert. denied*, 562 U.S. 1020, 131 S.Ct. 549, 178 L.Ed.2d 402 (2010) (internal citation omitted).

The Uniform Firearms Act provides, in relevant part, as follows:

**§ 6105.  Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a)      Offense defined.—**

(1)    A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession…." **Commonwealth v. Jones**, 874 A.2d 108, 121 (Pa.Super. 2005).  "Constructive possession is the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control." **Id.**

Dominion and control means the defendant had the ability to reduce the item to actual possession immediately…or was otherwise able to govern its use or disposition as if in physical possession.  ...  Mere presence or proximity to the

- 6 -

contraband is not enough. Constructive possession can be established by inferences derived from the totality of the circumstances.

***Commonwealth v. Peters***, ___ Pa. ___, ___, 218 A.3d 1206, 1209 (2019)

(internal citations omitted).

Moreover, a witness' testimony alone is sufficient to prove possession.

***See, e.g., Commonwealth v. Antidormi***, 84 A.3d 736, 757 (Pa.Super.

2014), *appeal denied*, 626 Pa. 681, 95 A.3d 275 (2014) (determining witness'

testimony alone was sufficient evidence to prove possession element under

Section 6105(a)(1)).

Instantly, the trial court found the Commonwealth presented sufficient

evidence to sustain Appellant's conviction, reasoning:

> In the instant matter, Ms. James gave a statement to Officer Reed in which she stated that she and [Appellant] had gotten into a verbal argument, [Appellant] pointed a gun at her, and began [waving] the gun around. … Ms. James had no reason to lie about [Appellant], her son, possessing a gun when she gave her statement to police. Additional corroborating evidence supporting Ms. James' testimony, was the testimony of Officer Reed that he recovered a firearm in a lidless, plastic storage container filled with clothing located in the exact area he had observed [Appellant] go downstairs and where he had heard the rapid footsteps of [Appellant]. There was no evidence that another person was in that location, the basement area, the area that [Appellant] fled and where the gun was recovered.
>
> Based on these pieces of evidence, the Commonwealth has proven beyond a reasonable doubt that [Appellant] had knowledge of the firearm and he had previously exercised control over the firearm as evidenced by Ms. James' statement to Officer Reed. These facts, although circumstantial, are more than sufficient evidence to support the [firearms] conviction beyond a reasonable doubt; *i.e.,*

> [Appellant] had knowledge, dominion and control of the firearm recovered from the lidless storage container and he had previously exercised control over the firearm as evidenced by his threat against Ms. James. For the reasons discussed above and in viewing the evidence in favor of the Commonwealth as verdict winner, there is sufficient evidence to support the [persons not to possess firearms] conviction.

(Trial Court Opinion at 4-5) (internal record citation omitted). We agree with the trial court's conclusion.

Although Appellant argues that Ms. James' statement to Officer Reed was inadmissible, for purposes of a sufficiency analysis we consider **all** evidence presented at trial even if the court erred in admitting it.[4] *See Reed, supra*; *Cousar, supra*. Officer Reed testified at trial that Ms. James told him Appellant pointed a gun at her and waved the gun around the living room. Even without consideration of the circumstances surrounding the officer's ultimate recovery of a gun in the house from which he saw Appellant flee, Ms. James' statement alone was sufficient to establish possession. *See Antidormi, supra*. As well, the parties stipulated that Appellant was prohibited from possessing a firearm. Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to establish Appellant's conviction for persons not to possess firearms. *See Reed, supra*; 18 Pa.C.S.A. § 6105(a)(1).

_____

[4] We address the admissibility of Ms. James' statement in our discussion of Appellant's second issue on appeal.

In his second issue, Appellant argues the trial court improperly admitted into evidence Ms. James' statement to Officer Reed. Appellant asserts that the record does not establish how much time elapsed between when the disturbing event occurred and when Ms. James spoke to Officer Reed. Appellant submits Ms. James made her statement to Officer Reed in narrative form. Appellant claims the evidence established no basis for Ms. James' reliability. Appellant contends Ms. James' statement failed to satisfy the excited utterance exception to the rule against hearsay. Appellant concludes Ms. James' disclosure to Officer Reed constituted inadmissible hearsay, and this Court should grant him a new trial.[5] We disagree.

Our standard of review of a trial court's admission or exclusion of evidence is well established and very narrow:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

**Commonwealth v. Montalvo**, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009),

---

[5] To the extent Appellant raises on appeal a Sixth Amendment Confrontation Clause argument, that claim is waived for failure to specify it in his Rule 1925(b) statement. **See Commonwealth v. Hansley**, 24 A.3d 410 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (explaining vague concise statement is functional equivalent of no statement at all; failure to specify claim of error in concise statement constitutes waiver on appeal).

*cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal citations and quotation marks omitted). "[A] discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." ***Commonwealth v. O'Brien***, 836 A.2d 966, 968 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004) (internal citation and quotation marks omitted).

Pennsylvania Rule of Evidence 801 defines hearsay as follows:

**Rule 801.  Definitions That Apply to This Article**

**(a)  Statement.**  "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.

**(b)  Declarant.**  "Declarant" means the person who made statement.

**(c)  Hearsay.**  "Hearsay" means a statement that

(1)  the declarant does not make while testifying at the current trial or hearing; and

(2)  a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801.

Pennsylvania Rule of Evidence 803 sets forth exceptions to the hearsay rule, in pertinent part, as follows:

**Rule 803.  Exceptions to the Rule Against Hearsay—Regardless of Whether the Declarant Is Available as a Witness**

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

\* \* \*

> **(2) Excited Utterance.** A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. …

\* \* \*

Pa.R.E. 803(2).

Our Supreme Court has explained:

> As is well-settled, excited utterances fall under the common law concept of *res gestae*. *Res gestae* statements, such as excited utterances, present sense impressions, and expressions of present bodily conditions are normally excepted out of the hearsay rule, because the reliability of such statements are established by the statement being made contemporaneous with a provoking event. While the excited utterance exception has been codified as part of our rules of evidence since 1998, ***see*** Pa.R.E. 803(2), the common law definition of an excited utterance remains applicable, and has been often cited by this Court:

>> [A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which [s]he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from h[er] reflective faculties.... Thus, it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event.

> The circumstances surrounding the statements may be sufficient to establish the existence of a sufficiently startling event.

***Commonwealth v. Murray***, 623 Pa. 506, 540-41, 83 A.3d 137, 157-58 (2013) (internal citations omitted).

> In determining whether a statement is an excited utterance, we have considered the following:
>
> > 1) whether the declarant, in fact, witnessed the startling event; 2) the time that elapsed between the startling event and the declaration; 3) whether the statement was in narrative form (inadmissible); and, 4) whether the declarant spoke to others before making the statement, or had the opportunity to do so.
>
> These considerations provide the guarantees of trustworthiness which permit the admission of a hearsay statement under the excited utterance exception. It is important to note that none of these factors, except the requirement that the declarant have witnessed the startling event, is in itself dispositive. Rather, the factors are to be considered in all the surrounding circumstances to determine whether a statement is an excited utterance.

***Commonwealth v. Keys***, 814 A.2d 1256, 1258 (Pa.Super. 2003) (internal citations and quotation marks omitted) (emphasis omitted).

Pennsylvania courts "have not established a bright line rule regarding the amount of time that may elapse between the declarant's experience and her statement." ***Commonwealth v. Gray***, 867 A.2d 560, 570 (Pa.Super 2005), *appeal denied*, 583 Pa. 694, 879 A.2d 781 (2005). "Rather, the crucial question, regardless of time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." ***Id.*** at 570-71 (internal quotation marks omitted). Furthermore, "a statement, which otherwise qualifies as an excited

utterance, is not precluded from falling within the excited utterance exception to the hearsay rule when made in response to questioning." ***Commonwealth v. Colon***, 102 A.3d 1033, 1039 (Pa.Super. 2014), *appeal denied*, 631 Pa. 710, 109 A.3d 678 (2015).

Instantly, the trial court addressed Appellant's hearsay claim as follows:

> Here, Officer Reed testified that Ms. James' statement was not the result of any detailed questioning or prolonged statement. In fact, Ms. James approached the officer and started speaking to him. Officer Reed observed that she was visibly distraught, she was crying, upset, speaking in a high-pitched voice, and she had a difficult time getting her words out, like she was trying to catch her breath. These observations by Officer Reed support that Ms. James, in fact, very recently witnessed a startling event and was still under the effect of that startling event when she spoke to Officer Reed and gave an account of what had transpired with her son. Upon consideration of the factors in determining whether an inadmissible hearsay statement should be admitted, the trial court determined that Ms. James' statement was an excited utterance. Thus, it was properly admitted as evidence by the trial court. The trial court did not err by overruling [Appellant]'s objection to testimony by Officer Reed regarding [Ms.] James' statement.

(Trial Court Opinion at 7). We agree. The trial evidence showed that Ms. James' alarming occurrence still greatly influenced her when she encountered Officer Reed. ***See Murray, supra***; ***Gray, supra***. We see no reason to disrupt the court's evidentiary ruling under these circumstances. ***See Montalvo, supra***; Pa.R.E. 803(2). Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2020